UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Michael Pedone,

Plaintiff,

- against -

City of New York and John/Jane Does #1-10, believed to be employees of the City of New York,

Defendants.

----------------------------------------X

CV-05-1629 (CPS)

MEMORANDUM OPINION AND ORDER

SIFTON, Senior Judge.

Plaintiff Michael Pedone brings this action pursuant to 42 U.S.C. § 1983 seeking damages against Defendants, City of New York and John/Jane Does #1-10, believed to be employees of the City of New York, for alleged violations of his Fifth, Eighth and Fourteenth Amendment rights and for a state law claim of negligence. Specifically, plaintiff claims that he was erroneously and unconstitutionally incarcerated by the City of New York and its employees for 83 days when he should have been transferred from City custody to State custody after being sentenced to a 90 day drug treatment program. Presently before the Court is defendant City of New York's motion to dismiss plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the defendant's motion is denied.

## BACKGROUND

The following facts are drawn from the Amended Complaint and attached exhibit, and are viewed in the light most favorable to Pedone, the non-moving party. *See Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).

Plaintiff Michael Pedone ("plaintiff") is a resident of the State of New York. Defendant City of New York ("NYC") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York acting in this matter by and through its Department of Correction officers, other employees, servants, and agents. Defendants John/Jane Does #1-10 ("individual defendants") were unidentified employees of the City of New York at the time Pedone was incarcerated.

On December 25, 2003, plaintiff was placed in the custody of the City of New York Department of Corrections ("DOC") after he was arrested for a parole violation[1] and, in addition, charged with criminal possession of a controlled substance in the seventh degree. On January 12, 2004, plaintiff pled guilty to the drug charge and was sentenced in Criminal Court of the City of New York to time served. He remained in DOC custody at that time awaiting a parole revocation hearing.

On March 8, 2004, plaintiff pled guilty at the parole

[1]Pedone had previously been convicted and had served a sentence of imprisonment. He was released to parole supervision on June 17, 2002, and declared delinquent based on violations or his parole as of November 6, 2003. On November 24, 2003, a parole warrant was issued.

revocation hearing, and the Administrative Law Judge ("ALJ") directed that plaintiff be placed in the State of New York 90 day Willard drug treatment program ("Willard"). Plaintiff became eligible for transfer to Willard on March 19, 2004, when the ALJ's decision was affirmed; however, because DOC records erroneously stated that the drug charge remained open, plaintiff remained in custody after this date.

Plaintiff thereafter regularly complained to one or more of the individual defendants regarding the delay in transferring him to Willard. Plaintiff also filed a *pro se* habeas corpus petition alleging that he was entitled to release because of the delay. On May 26, 2004, the Supreme Court of the State of New York issued a decision dismissing the habeas petition, holding that the delay in transferring plaintiff to Willard was erroneous, but that it did not entitle plaintiff to release; instead, it entitled plaintiff to withdraw his consent to placement in the Willard program. The decision further stated "[s]hould petitioner still consent to Willard placement, the State is directed to transfer him to that program forthwith. If petitioner does not consent, the State is directed to re-evaluate the parole violation sanction forthwith and, if deemed appropriate, return petitioner to State prison." Thereafter plaintiff again consented to the transfer to Willard.

On June 10, 2004, over two months after he should have been,

plaintiff was transferred to the custody of the New York State Willard program to begin his 90 day mandated treatment.

Plaintiff now seeks damages pursuant to 42 U.S.C. 1983 against defendant NYC and the individual defendants for alleged violations of his Fifth, Eighth, and Fourteenth Amendment rights and based on a common law claim of negligence. He alleges that the aforementioned violations arose because he was unlawfully kept in DOC custody for 83 days after he should have been transferred to Willard.

Defendant NYC moves to dismiss plaintiff's Amended Complaint[2] pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff's claims are barred by the *Heck* rule, (2) plaintiff has failed to plead municipal liability, (3) negligence is insufficient to state a claim under federal law, (4) plaintiff's claims are barred by the collateral estoppel doctrine, and (5) plaintiff's claims are barred by the Rooker-Feldman doctrine.

For the reasons that follow, defendant NYC's motion to dismiss is denied.

**DISCUSSION**

This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, which creates jurisdiction over civil

---

[2]Plaintiff initially filed a complaint in which only the City of New York was named as defendant. Plaintiff thereafter filed an Amended Complaint also naming John/Jane Does #1-10, believed to be employees of the City of New York, as defendants.

actions arising under federal law; 28 U.S.C. § 1343, which creates jurisdiction over actions arising under 43 U.S.C. § 1983; and 28 U.S.C. § 1367, which creates supplemental jurisdiction over claims arising under state law.

Defendant NYC seeks dismissal of plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)(citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. V. Town of Darien*, 56 F.3d 375,378 (2d Cir.1995). A Court is also permitted to take into account the contents of documents attached to or incorporated in the complaint. *Colmas v. Harsett*, 886 F.2d 8,13 (2d Cir.1989). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80,83 (2d Cir.2000).

Additionally, a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if the Court finds that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.,* 231 F.3d 82, 86 (2d Cir.2000).

Section 1983 of 42 U.S.C. provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to allege a Section 1983 claim, a plaintiff must (1) "allege the violation of a right secured by the Constitution and laws of the United States" and (2) "show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.

Defendant NYC asserts five arguments in favor of dismissal of plaintiff's complaint: (1) the *Heck* rule, (2) failure to plead municipal liability, (3) mere negligence is insufficient to state a claim, (4) collateral estoppel, and (5) the Rooker-Feldman doctrine. I consider these arguments, in turn, below.

*The Heck Rule*

Defendant NYC argues that plaintiff’s complaint should be dismissed as barred by the *Heck* rule. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that when adjudication of a prisoner’s § 1983 claim necessarily implicates the validity of the underlying conviction, the claim should be dismissed, unless the underlying conviction has already been reversed, expunged, declared invalid or called into question by an issuance of a writ of habeas corpus. Plaintiff Pedone’s § 1983 claim does not implicate the validity of plaintiff’s conviction, and, accordingly, his claim is not barred by the *Heck* rule.

As the *Heck* Court stated:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. **But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.** *Id.* at 487 (emphasis added).

In the present case, plaintiff filed both his habeas petition and the present complaint precisely because he was relying on the validity of the state judgement and *wanted* to be transferred to Willard rather than remain in City custody in order to serve his sentence pursuant to his conviction, but was

prevented by defendants from timely doing so. The *Heck* Rule does not bar plaintiff's complaint.[3]

*Failure to Plead Municipal Liability*

Defendant NYC next argues that plaintiff's Amended Complaint should be dismissed because it fails to allege sufficient facts to subject defendants to municipal liability.

Municipalities and other governmental bodies are "persons" within the meaning of § 1983 and may be held liable for violations of constitutional rights. *Monell v. New York City Dep't of Social Srvcs.*, 436 U.S. 658, 689-94 (1978). However, a municipality cannot be held liable solely for the misdeeds of its employees. *Id.* at 694. Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the [alleged] injury." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, (1997). In addition, it is well-settled that § 1983 "does not impose liability upon a municipality...solely on the basis of *respondeat superior*." *Willner v. Town of North Hempstead*, 977 F.Supp. 182, 193 (E.D.N.Y. 1997) (citing *Monell*, 436 U.S. at

[3]Defendant cites *Peterson v. Tomaselli*, 2004 WL 2211651 (S.D.N.Y.2004), in support of the proposition that plaintiff's claims in the present matter are barred by the *Heck* rule. In that case, plaintiff Peterson, who sought § 1983 redress for his alleged unlawful confinement, had been issued a writ of habeas corpus which explicitly found that he had been unlawfully detained. The Court reasoned that while Peterson's § 1983 action implicated the validity of his sentence, he was not barred by the Heck rule from bringing his § 1983 claim because his sentence had already been "called into question." *Id*. at 15. Here, as explained above, plaintiff's claims do not implicate the validity of his conviction or sentence. Accordingly, the denial of his habeas claim is of no consequence to plaintiff's § 1983 claim.

694). "[T]here must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Inadequacy of training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).[4] For the reasons set forth below, I find that plaintiff Pedone has alleged facts sufficient to state a claim of municipal liability against defendants.

"The mere fact that Plaintiff recited the municipal liability standard in his Amended Complaint does not, without more, state a claim against [defendants]." *Bowen v. County of Allegheny*, 2004 WL 1588213, 3 (W.D.N.Y. 2004). *See also*, *Houghton v. Cardone*, 295 F.Supp.2d 268, 278 (W.D.N.Y. 2003) (dismissing claims against municipal defendant because "[t]he complaint contains only the most conclusory allegations that the

[4]"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program....Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 390-391 (internal citations omitted).

county defendants knew about the officers' alleged misconduct, that they failed to properly supervise or train them, and so on”); *Smith v. Metro North Commuter R.R.*, 2000 WL 1449865, 10 (S.D.N.Y. 2000) (“a plaintiff's conclusory assertion that a municipality...failed to train its employees, does not state a claim in the absence of some specific factual allegations tending to support the inference”).

Plaintiff has failed to allege facts sufficient to plead that plaintiff’s treatment followed from any municipal custom or from a deficiency in training. Indeed, plaintiff’s own allegation, that the individual defendants’ conduct was “believed to be in violation of applicable policies and procedures” implies that plaintiff’s treatment amounted to an isolated mistake by an individual defendant or defendants.

However, the Court of Appeals has stated:

> “Where plaintiffs allege that their rights were deprived not as a result of the enforcement of an unconstitutional official policy or ordinance, but by the unconstitutional application of a valid policy, or by a city employee's single tortious decision or course of action, the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself. Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers....Thus, even a single action by a decision-maker who ‘possesses final authority to establish municipal policy with respect to the action ordered,’ ...is sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983.” *Amnesty America v. Town of West Hartford*, 361 F.3d 113,

126 (2d Cir.2004) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986)).

In the present case, plaintiff's incarceration was the result of a failure of communication between the New York City Criminal Court Judge who disposed of the drug charge and the City DOC. Drawing every inference in plaintiff's favor, as one must at this stage of the proceedings, the Judge failed to notify the proper authorities of his order and is a policymaker who makes final decisions as to how his or her orders are transmitted to the appropriate officials of the DOC. It is therefore not "beyond a doubt that the plaintiff can prove no set of facts" which would demonstrate that this error was attributable to a sufficiently high-level policymaker to subject the City to municipal liability.

I therefore find that plaintiff Pedone has alleged facts sufficient to make out a claim for municipal liability under § 1983; however, if, upon discovery, it is determined that plaintiff's incarceration was not attributable to an authorized city policymaker, then defendants may seek the appropriate relief.

*Negligence as Insufficient to State a Cognizable Claim*

Defendant NYC next argues that plaintiff has pleaded, at most, a claim of negligence against defendants, and mere negligence is not sufficient to state a cognizable claim under § 1983 because negligence does not rise to the level of a

constitutional violation. As argued by plaintiff, and as held above, plaintiff has alleged sufficient facts to plead municipal liability for constitutional deprivations for the purposes of § 1983. Because this Court is allowing plaintiff's federal claims to proceed, the Court retains pendent jurisdiction over plaintiff's state court negligence claims.

*Collateral Estoppel Doctrine*

Defendant NYC further contends that plaintiff's claims are barred by the doctrine of collateral estoppel because the claims are based upon the same facts and issues that he raised in his state court habeas petition. Defendant relies on *Boomer v. Bruno*, 134 F.Supp.2d 262 (N.D.N.Y. 2001) in making its arguments. According to *Boomer*, the Court must look to New York law in order to determine what preclusive effect should be given to the finding of the state court in plaintiff's habeas proceeding. Federal courts must give state court judgments "the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was rendered." *Id.* at 277, (*citing Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996); *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999). "There are two requirements under New York law for collateral estoppel to apply: (1) there must be an identity of issue which has been necessarily decided in the prior action and is decisive of the present one and (2) there must have been a full and fair

opportunity to litigate the preclusive decision." *Id*. "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991).

In the present matter, defendant NYC has not met its burden. Defendant argues only that the state court's denial of plaintiff's habeas petition implicates the collateral estoppel doctrine because the state court "decided that plaintiff's incarceration was lawful and that issue is determinative of plaintiff's constitutional claims in this action." The habeas decision, however, states only that, "[i]n his writ, petitioner argues that he is entitled to immediate release to parole supervision because of the delay--now over two months--in transferring him to what he expects to be a ninety-day Willard program. While that dely [sic] was erroneous and entitles petitioner to now withdraw his consent to placement in the Willard program, however [sic], it does not entitle him to release." Defendant has thus failed to meet its burden of showing that plaintiff litigated the same issues before the state court he attempts to litigate before this Court. When plaintiff sought habeas relief before the state court, he sought only

release from custody due to his erroneous incarceration. He did not implicate the customs and policies of the City in the context of a constitutional claim as he does now. Contrary to defendant’s position that the state court ruled plaintiff’s incarceration lawful, the state court found that plaintiff’s incarceration was “erroneous” but that plaintiff had not sought the proper form of relief. In addition, plaintiff’s habeas corpus petition was filed *pro se*; it therefore cannot be held that he had a full and fair opportunity to litigate the issues before the state court. *See Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 501, (1984).

I therefore find that plaintiff’s claim is not barred by the doctrine of collateral estoppel.

*Rooker-Feldman Doctrine*

Defendant finally argues that plaintiff’s claims are barred by the Rooker-Feldman doctrine, which holds that “the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment.” *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998); *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Dist. Of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486

(1983). As stated above, a finding for the plaintiff in this case would not constitute a reversal of the state court's judgment denying plaintiff habeas relief, because the state court did not rule on the constitutionality of plaintiff's incarceration, and because plaintiff is not here seeking release from custody. I therefore conclude that plaintiff's claim is not barred by Rooker-Feldmen doctrine.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the Amended Complaint is denied. The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
September 19, 2005

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge